No. 78,093

In the Matter of LEO N. JOHNSON, *Respondent.*

(936 P.2d 258)

Opinion filed April 18, 1997.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Mark F. Anderson*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*Gene E. Schroer*, of Schroer, Rice, P.A., of Topeka, argued the cause for the respondent, and *Leo N. Johnson*, respondent, argued the cause pro se.

*Per Curiam*: This original proceeding in discipline was filed by the office of the Disciplinary Administrator against Leo N. Johnson, of Council Grove, an attorney admitted to the practice of law in the state of Kansas. The formal complaint filed against respondent alleges violations of MRPC 1.1 (1996 Kan. Ct. R. Annot. 257); 1.3 (1996 Kan. Ct. R. Annot. 264); 1.4 (1996 Kan. Ct. R. Annot. 270); and 8.4 (1996 Kan. Ct. R. Annot. 350); and Supreme Court Rule 207 (1996 Kan. Ct. R. Annot. 205).

A hearing before a panel of the Kansas Board for Discipline of Attorneys was held on September 11, 1996. Respondent appeared pro se and by counsel, Gene E. Schroer.

We note that respondent has been before this court on numerous occasions. On March 8, 1979, respondent was indefinitely suspended from the practice of law. *In re Johnson*, 225 Kan. 466, 592 P.2d 102 (1979). On December 18, 1979, this court reinstated respondent to the practice of law. However, on March 24, 1980, respondent was ordered to appear before this court on an order to show cause why he should not be suspended or disbarred from the further practice of law. One of the provisions of the December 18, 1979, reinstatement was that respondent " 'totally abstain from the use of intoxicating liquor and beverages, including 3.2 per cent beer.' " *In re Johnson*, 227 Kan. 478, 608 P.2d 1012 (1980). Respondent violated that provision and was again indefinitely suspended from the practice of law. 227 Kan. at 479. On March 20,

1989, respondent was again reinstated to the practice of law, providing that he "totally abstain from the use of any and all intoxicating liquor and beverages, including 3.2 percent beer." *In re Johnson*, 244 Kan. 591, 592, 770 P.2d 842 (1989). On January 17, 1992, respondent was disciplined by public censure for his "failure to cooperate in the investigation herein and in light of his 'prior violations of the ethical rules.' " *In re Johnson*, 250 Kan. 286, 822 P.2d 72 (1992). On June 2, 1995, respondent was placed on probation for 2 years. *In re Johnson*, 257 Kan. 946, 895 P.2d 1256 (1995).

The present complaint against respondent involved the sum of $500, which Kym Roberts, the complainant, paid to respondent as the fee for respondent to accomplish the adoption by George Roberts of Kym Roberts' daughter.

The panel found that the following facts were established by clear and convincing evidence:

"2. Respondent was retained July 10, 1993, by Complainant, Kym Roberts and her husband George, to file papers accomplishing George's adoption of Kym's daughter. Mr. & Mrs. Roberts paid a $500 retainer and clearly alerted Respondent to the need to finalize the adoption quickly. The daughter's natural father was violent and they sought to cut off his parental rights since he had no contact with and gave no support to the child.

"3. Mrs. Kym Roberts testified that Respondent promised to comply with their wishes. Nonetheless, it was May 1994 before Respondent's secretary notified Mrs. Roberts that the adoption hearing was set for June 21, 1994. She and her family returned to Council Grove, Kansas but there was no hearing on the docket. Respondent took no action despite contact from and to Complainant in January 1995 and February 1995. Finally in September, 1995, Mrs. Roberts filed her complaint with the Kansas Disciplinary Administrator's office.

"4. Although contacted by the Disciplinary Administrator's office and its investigator in September, October and November, 1995, Mr. Johnson first called the investigator November 15, 1995. Still Respondent never filed a written Answer to the complaint and the Formal Complaint was set for hearing. It alleges violations of KRPC 1.1, 1.3, 1.4, 8.4, and Supreme Court Rule 207.

"5. Respondent testified at the hearing that he just put off the adoption filing as he does everything else. He only contacted Mr. Schroer about representing him in the disciplinary hearing one day before the hearing date.

"6. Mrs. Roberts finally achieved the adoption by hiring a Michigan attorney for $800. The process took that attorney about 8 weeks.

"7. On cross examination from Mr. Diehl, Respondent explained that he was an alcoholic who ceased drinking in 1984. He plans to see a psychiatrist about his avoidance problems which others have suggested is a symptom of depression. He acknowledged that he has a habit of storing unopened letters from the investigator and others."

## The panel made the following conclusions of law:

"Respondent's conduct violates the Kansas Rules of Professional Conduct Sections 1.1, 1.3, 1.4, 8.4 and Supreme Court Rule 207. The Panel finds by clear and convincing evidence that Respondent violated KRPC 1.1, 1.3, 1.4 and 8.4 by generally neglecting a case he willingly accepted. He failed to communicate with his client, he told her pleadings had been filed and hearing set when no such work had been accomplished. He carried on the appearance of representing her when in fact he did little, if anything to accomplish the desired adoption.

"Furthermore, Respondent failed to cooperate or even communicate with the Disciplinary Administrator's office in its investigation of the complaint against Respondent. This inaction constitutes a violation of Supreme Court Rule 207."

## The panel made the following recommendation:

"In making its recommendations for discipline, the Panel has reviewed the ABA Standards for Imposing Lawyer Sanctions. The factors to be considered include the following: 1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; 2) whether the lawyer acted intentionally, knowingly or negligently; 3) the amount of the actual or potential injury caused by the lawyer's misconduct; and 4) the existence of aggravating or mitigating factors.

"The evidence shows that Respondent violated a duty to his clients, Mr. & Mrs. Roberts, by neglecting their requested adoption. It cost them time and money and emotional strain because of the delay. They made trips and calls to Respondent's office, but had to hire an attorney in Michigan to accomplish the adoption. Even a letter of complaint to the Disciplinary Administrator did not motivate Respondent to represent them as he was duty bound. Mrs. Roberts also testified about the problems she had with schools and financial assistance and medical insurance during the time she was trying to get her daughter adopted by her husband.

"We must then turn to the ABA Standards on Aggravation and Mitigation to determine whether any factors present either increase or reduce the nature and extent of discipline to be imposed."

## As to aggravating factors, the panel found:

"a. Prior disciplinary offenses. Respondent has a disciplinary record and has been suspended from the practice of law. . . .

. . . .

"c. Pattern of misconduct. Respondent has a disconcerting habit of not opening letters that might contain bad news.

. . . .

"e. Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency. Respondent failed to file a written response to the Disciplinary Administrator's investigation or Formal Complaint and refuses to stipulate to the violations.

. . . .

"g. Refusal to acknowledge wrongful nature of conduct. Respondent refuses to stipulate to the violations.

. . . .

"i. Substantial experience in the practice of law. Respondent is a 1962 graduate and admittee to practice and has sufficient experience to have been attentive to this adoption matter.

"j. Indifference to making restitution. Respondent has not yet returned complainant's $500 fee."

The panel found no mitigating factors but did acknowledge that "[i]t is unclear whether Respondent suffers from depression."

The panel concluded its report as follows:

"After reviewing all of these factors, the Panel recommends that Respondent be suspended from the practice of law; however he should be placed on probation to be concurrent with and on the same terms as his present probation ordered in his prior disciplinary case, *In re Johnson*, 257 Kan. 946 (1995). Furthermore the Panel recommends that Respondent be ordered to make restitution by returning the $500 fee to Mrs. Roberts as well as reimbursing her travel expenses for coming to this September 11, 1996 hearing in Topeka, Kansas. Mr. Diehl is directed to obtain the reasonable expenses information from Complainant. In addition, Respondent is not in compliance with the Supreme Court's order [in] *In re Johnson*, 257 Kan. 946 (1995) . . . wherein Respondent is required to submit a plan to the Disciplinary Administrator's office for obtaining counseling and/or assistance to ensure no repeat of his unethical behavior. In fact his behavior leading to and including this proceeding is almost an exact repeat of his previous conduct that violated the KRPC."

The respondent did not file exceptions to the report of the hearing panel. He does not contend that his actions are not violations of the Model Rules of Professional Conduct. He argues that his conduct was due to depression. Respondent submitted a letter from Dr. Ed Levy indicating that respondent has been a patient of Dr. Levy's since September 18, 1996. The purpose of the letter was to request a continuance of this matter for several months to

allow a full diagnosis and report. The doctor also indicated that respondent was "depressed at a mild to moderate level," and he started respondent on Prozac with good effect.

At oral argument before this court, counsel for respondent stated that he had been contacted by respondent only days before the hearing before the panel. Counsel indicated respondent suffers from depression and has a history of alcohol dependence. Counsel requested an extension of time to formulate and submit a specific plan for respondent to receive treatment and continue to practice law.

We note that respondent failed to present any evidence to the panel that he suffers from depression, nor did he submit a specific plan for treatment and supervision of his practice. Although this court considers mitigating factors in assessing discipline, such matters should be presented at the hearing before the panel and not for the first time at oral argument before this court.

However, the question is not whether respondent may be suffering from depression but, even if he is, whether he should be allowed to continue to practice law. A majority of this court is of the opinion that he should not.

Respondent's conduct constitutes a serious violation of the Model Rules of Professional Conduct. As noted by the panel, his prior record of disciplinary violations is not only serious, but also his misconduct in the present case is "almost an exact repeat" of that for which he is presently on probation. Nor is he an inexperienced lawyer with an unblemished record.

We accept the panel's findings and conclusions, but a majority of this court does not agree with the panel's recommended discipline. The panel's recommendation might be acceptable to this court absent respondent's disciplinary record. Less than 2 years ago, respondent assured this court that he would never again be before this court for violation of the Model Rules of Professional Conduct. He convinced this court that he should have another chance to practice law. A majority of this court is no longer convinced that he should be allowed to do so.

IT IS THEREFORE ORDERED that Leo N. Johnson be and he is hereby indefinitely suspended from the practice of law in Kansas.

IT IS FURTHER ORDERED that respondent comply with the provisions of Supreme Court Rule 218 (1996 Kan. Ct. R. Annot. 226), that he pay the costs of this proceeding, and that this opinion be published in the Kansas Reports.

ABBOTT, J., dissenting: Respondent's problem in this case took place during the same time period and is of the same nature as that for which he was put on probation in *In re Johnson*, 257 Kan. 946, 895 P.2d 1256 (1995). He appears to be benefiting from medical treatment and is in a better position to be rehabilitated now than when we put him on probation in June 1995. The facts in this case occurred between July 1993 and September 1995, when a formal complaint was filed.

Certainly respondent has become a nuisance to this court, but it seems to me that the only thing he has done wrong since we placed him on probation is fail to return the $500 fee. That sum is in his lawyer's trust account, and we can make the client whole by requiring interest to be paid, as well as any additional costs the client has incurred.

In light of his medical report and the fact that the unprofessional conduct at issue occurred at the same time as that in his last case, I would return him to supervised probation. If he is then unable or unwilling to perform as he should, I would vote to disbar him.

LOCKETT, J., joins in the foregoing dissent.